UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LILIA RAMOS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 2:05-CV-189 JVB |
| v. ) | |
| ) | |
| GEORGE PABEY and CHARLES PACURAR, ) | |
| Individually and in their official capacities as ) | |
| Mayor and City Controller of the City of East ) | |
| Chicago, Indiana, respectively, and the CITY ) | |
| OF EAST CHICAGO, a municipal corporation, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

On May 13, 2005, the Plaintiff, Lilia Ramos, filed suit against George Pabey, the Mayor of the City of East Chicago; Charles Pacurar, the City Controller; and the City itself, alleging that she was unlawfully terminated from her job as a City employee. The Plaintiff brought this action under 28 U.S.C. § 1983, alleging that her termination was on account of her support for former Mayor Richard Pastrick, in violation of her First Amendment rights to free speech and association.

On February 5, 2007, all the Defendants moved for summary judgment. On March 12, 2007, the Plaintiff filed a Response, and on April 10, 2007, the Defendants filed their Reply. On the same day, the Defendants moved to strike parts of the Plaintiff's Response. On May 10, 2007, the Plaintiff filed a Memorandum in opposition to the Defendants' Motion to Strike, to which the Defendants responded in support of their motion on May 25, 2007.

**DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and

resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).  A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, 477 U.S. 242, 249–50* (1986).

### B.  The Defendants' Motion to Strike

The Defendants move to strike portions of the Plaintiff's Appendix of Material Facts Creating Genuine Issues.  Virtually all of the challenged material concerns  statements about various members of the Pabey and Pastrick administrations, whom they supported in the elections and whether they were hired, fired, demoted or promoted by the Pabey administration.  The Defendants claim that some statements are inadmissible as hearsay, opinion or unsubstantiated speculation**.** The Plaintiff responds by conceding the Defendants' arguments as to some statements, continuing to urge the validity of others, and attempting to rehabilitate still others by means of citations to portions of the record not mentioned in the Plaintiff's initial response.  The Defendants object to the Plaintiff's attempts to supplement her Appendix with additional facts.  The Court declines to rule on the Motion to Strike, for reasons that will become clear.

### C.  Material Facts

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, and ignoring those statements challenged in the Defendants' Motion to Strike, the facts assumed to be true for the purposes of ruling on the Defendants' Motion for Summary

3

Judgement are:

On January 4, 2005, the Plaintiff was an employee of the City of East Chicago, working in the City's Department of Parks and Recreation. She had originally been hired in 1997, during the administration of then-Mayor Robert Pastrick, as a an administrative assistant clerk. She was eventually promoted to the position she held when Defendant Mayor George Pabey took office in late December, 2004.

Defendant Pabey had defeated the incumbent of 32 years, Mayor Pastrick, in a special primary election held in 2004 after the 2003 election results were thrown out by the Indiana Supreme Court. Pabey went on to victory in a special general election held on December 28, 2004, to gain the office of mayor. He was sworn in on December 29, 2004. On January 4, 2005, the Plaintiff was called to the office of the newly appointed City Controller, Defendant Charles Pacurar, who told her that Mayor Pabey wanted her relieved of her duties. The Plaintiff was given no other reason for her termination. She wrote a letter to Mayor Pabey asking for the reasons for her termination, but received no response. Defendant Pacurar stated in his deposition that the decision to terminate the Plaintiff had been his alone; he had not discussed the move with Defendant Pabey. The new mayor, Defendant Pabey, without input from Defendant Pacurar, appointed the Plaintiff's successor, Jose Bustos, who had been an active Pabey supporter during the mayoral campaigns in both 2003 and 2004.

The Plaintiff had been an active Pastrick supporter during those same elections, having distributed yard signs, campaigned door to door distributing fliers, and donated funds. She had also posted a sign in her yard and a bumper sticker on her car and had attended public Pastrick fund raisers. Defendants Pabey and Pacurar were aware that the Plaintiff was a Pastrick

4

supporter.  In his deposition Defendant Pacurar stated that the decision to remove the Plaintiff from her job in the Department of Parks and Recreation was motivated by his desire to "revitalize" the City's recreation programs. He had paid unobserved visits to two of the City's seven community centers and concluded that "the recreation department in the City of East Chicago was not functioning the way a recreation department should function in providing an outlet for our younger people, and I just thought a change over there was necessary."  (Pacurar Dep. at 94.)  Neither he nor anyone else in the new administration discussed these concerns with the Plaintiff.  The Plaintiff's personnel file contained no disciplinary action reports and no one ever told her that she was not doing a satisfactory job.

The Plaintiff stated that her job title was "manager" of the "recreation office."  Five recreation coordinators, one secretary and a special events assistant reported to her. She indirectly supervised the nineteen recreation leaders who reported to the recreation coordinators. The Plaintiff worked under the direction of the Director of Parks and Recreation, Joe Valdez. She never reported directly to the Mayor or received direction from the Mayor.  She coordinated community events and managed the day-to-day operations of the recreation office: scheduling employees, ordering supplies, and doing the payroll.  She signed contracts when directed to do so by Valdez.  She attended Park Board meetings when Valdez requested her presence.  She attended Department Head meetings at Valdez's request to make announcements about new programs and events. She had little budget input, could not hire and fire, had no formal role in evaluating and disciplining employees and could not implement new programs on her own.

Jose Bustos was appointed to the position of "Director of Recreation" for the City of East Chicago in February, 2005.  He stated in his Declaration that for the purposes of payroll, his

5

position is known as "Recreation Manager." He reports to the Superintendent of Parks and to the Park Board. According to him, he is the highest ranking employee in the Recreation Division, responsible for the overall operations of the Recreation Division and all of its twenty-five to thirty full-time employees. He has been given broad discretion to create, revise and implement recreation programs and activities. He attends and contributes to monthly Department Head meetings and Park Board meetings. He recommends budget allocations for the Recreation Division and has the authority to direct funds budgeted to the Recreation Division to various needs. He has the authority to discipline employees and to recommend hirings and firings, though final approval must come through Human Resources. Since assuming his job for the City he has worked to create new programs, including cultural diversity programs, music programs, soccer leagues, poetry programs and the Parents and Teachers Helping Students Initiative. For about twenty years before coming to work for the City he was employed by community service oriented organizations, including the Catholic Workers House and the Caesar Chavez House.

**D.  The Plaintiff's *Prima Facie* Case**

In order to make out a *prima facie* case, the Plaintiff must show that there is evidence that she engaged in protected conduct, and that such conduct was a substantial or motivating factor in the decision to terminate her employment. *See Roger Whitmore's Auto Services, Inc. v. Lake County,* 424 F.3d 659, 668 (7th Cir. 2005).

It is beyond dispute that the First Amendment's guaranties of freedom of speech and association protect a public employee from adverse employment action when the employer's

motivation is retaliation for the employee's support of a candidate for office, unless the employee's position is one for which political loyalty is a valid criterion. A public employee may be dismissed on the basis of her political affiliation where the nature of her job makes political loyalty a valid qualification for the effective performance of the job. *Allen v. Martin,* 460 F.3d 939, 944 (7th Cir. 2006). Political loyalty is a valid qualification for a government position where the position involves "the making of policy and thus the exercise of political judgment." *Riley v. Blagojevich,* 425 F.3d 357, 359 (7th Cir. 2000). The test is whether the position in question "authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir.1981). In order to make this determination, the focus is to be on the inherent powers of the office as presented in the official job description rather than on what duties an individual officer holder actually performs. *Riley,* 425 F.3d at 360 – 61. The employer bears the burden of establishing that political affiliation is an appropriate qualification for the job from which the plaintiff has been ousted. *Elrod v. Burns,* 427 U.S. 347, 368 (1976).

The Defendants maintain that the Plaintiff's position was a high level policymaking position which was exempt from the First Amendment's ban on patronage dismissals. However, no official written job description has been brought to the Court's attention. The allegedly undisputed facts concerning the Plaintiff's responsibilities which are set forth in the Defendants' Statement of Material Facts as to Which There is No Genuine Issue are considerably different than the Plaintiff's description of her duties found in her Appendix of Material Facts Creating Genuine Issues. The responsibilities of the position as described by the Plaintiff are more those

of an office manager than a high level policy maker. The Plaintiff paints a picture of a job with little autonomy, discretion, or meaningful input into policy decisions. Jose Bustos's description of his responsibilities suggests that he has been given considerably more discretion and authority than the Plaintiff had.  However, the degree of discretion and authority Bustos claims to have now as Director of Recreation says nothing about how much discretion and authority the Plaintiff had.  Although the Supreme Court has stated that the focus should be not on the duties each individual office holder performs, but rather on the "inherent powers of the office," it is impossible to say what the inherent powers of the office of "recreation director" or "recreation manager" are, absent a written job description.

The question of whether a position is exempted from the First Amendment patronage dismissal ban is a factual one that should ordinarily be left for a jury to determine.  *Pleva v. Norquist,* 195 F.3d 905, 912 (7th Cir.1999).  On the record before the Court it is impossible to conclude, as a matter of law, that the Plaintiff's position was one for which political affiliation is a valid criterion.

The Defendants assert that, even if the Plaintiff's job is protected, there is a complete absence of competent evidence that her political support for the former mayor was a substantial factor in her termination.

The Court disagrees.  It is not disputed that the Defendants knew of the Plaintiff's support for Pastrick.  The only reason Defendant Pacurar gave the Plaintiff for her dismissal was that it was what the Mayor wanted. The Plaintiff received no response to her letter requesting the reason for her termination. She was fired during the first week of the new administration and the Mayor himself filled her former position with someone who had actively participated in his

campaigns. The reason now given for the Plaintiff's termination was not articulated until after the institution of the Plaintiff's suit. These facts, along with the evidence of the minimal effort the new administration put into evaluating the extent and effectiveness of the City's recreation programs prior to the Plaintiff's termination, permit the inference that the Plaintiff's support for the former mayor was a substantial or motivating factor in her firing.

**E. The Defendants' Justification for Terminating Plaintiff**

Even if the Plaintiff has shown that her conduct was constitutionally protected, and that this conduct was a substantial or motivating factor in an adverse employment action, the Defendants can still defeat her claim by showing that they would have reached the same decision even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 at 287 (1977). The Defendants have the burden of proof on this issue. *Spiegla v. Hull*, 371 F3d 928, 942 (7th Cir. 2004), *vacated on other grounds, Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007). Put another way, the Defendants can prevail if they can show a legitimate, nonpolitical reason for the Plaintiff's dismissal. *Nelms v. Modisett*, 153 F.3d 815, 815 (7th Cir.1998). When the moving party will bear the burden of proof on an issue at trial, in order to obtain summary judgement, that party must show that the evidence on the question is so one-sided that no reasonable jury could find for the party opposing the motion. *Branham v. Snow*, 392 F.3d 896, 907 (7th Cir. 2007).

The Defendants urge that their legitimate, nonpolitical reason for removing the Plaintiff was the desire for a change in leadership to revitalize the programming offered by the recreation division. However, evidence that this reason was advanced somewhat belatedly, that Defendant

9

Pacurar has given two different accounts of whose decision it was, and that the decision was reached without a systematic review of the recreation office or the Plaintiff's job performance permits the inference that a substantial reason for Plaintiff''s termination was her support for the previous administration. The Defendants have fallen short of showing that no reasonable jury could conclude otherwise than that their motives for dismissing the Plaintiff were nonpolitical.

Because the Court finds that, without consideration of the matters which are the subject of Defendants' Motion to Strike, the Plaintiff has shown that material issues for trial exist, the Court has determined that the motion is moot.

## CONCLUSION

As explained in this Order, the Court DENIES Defendants' Motion for Summary Judgment.  The Motion to Strike is rendered moot.

SO ORDERED on September 5, 2007.

                                             s/ Joseph S. Van Bokkelen
                                             JOSEPH S. VAN BOKKELEN
                                             UNITED STATES DISTRICT COURT JUDGE